AB-98-46                                                        1

En el Tribunal Supremo de Puerto Rico

| In re: | Queja |
|---|---|
| Fred H. Martínez<br>Lawrence Odell | 99 TSPR 119 |

Número del Caso: AB-98-46

Oficina del Procurador General:    Carlos Lugo Fiol
                                   Procurador General

Abogados de la Parte Querellada:   Lcdo. Rubén T. Nigaglioni
                                   Lcdo. Mario L. Paniagua
                                   Lcdo. Luis Mariano Negrón Portillo

Fecha: 6/25/1999

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

    Fred H. Martínez                    AB-98-46
    Lawrence Odell


PER CURIAM


San Juan, Puerto Rico, a 25 de junio de 1999

    Mediante Per Curiam del 12 de abril de 1999, **censuramos enérgicamente** a los abogados Fred H. Martínez y Lawrence Odell por incurrir en conducta contraria al Canon 35 del Código de Ética Profesional, dispositivo de que "el abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos, y al presentar causas". Nuestra decisión estuvo basada en que incontrovertidamente quedó demostrado que ambos abogados suscribieron bajo juramento en escritura pública hechos cuya falsedad conocían.[1] Nos piden

---

[1] Específicamente resolvimos que faltaron a la verdad al suscribir la escritura pública Núm. 68,

reconsideración.

I

Los Lcdos. Martínez y Odell fundamentan su solicitud en varios planteamientos. Examinémoslos. **Primero**, aducen que en 1981, año en que otorgaron la escritura pública, el alcance del Canon 35 de Ética Profesional, a la luz de la jurisprudencia existente, estaba limitado a actuaciones de abogados ejerciendo ante los tribunales o como notarios. Nos dicen que nuestra decisión es una ampliación del alcance del Canon 35 que amerita ser aclarada. **Segundo**, sostienen que el quejoso Lcdo. Ralph Sierra Jr., conocía la supuesta conducta indebida desde años atrás y no hizo nada. **Tercero**, exponen que el Lcdo. Sierra Jr. excluyó de su queja al Lcdo. Colorado -aún cuando éste incurrió en la misma conducta-, y tal proceder selectivo representa de por sí conducta antiética que debemos rechazar. Finalmente, insinúan parcialidad de este Tribunal, al calificar como "sorprendente" que no hayamos censurado al Lcdo. Colorado.

---

otorgada el 9 de marzo de 1981 ante el notario público Rafael Kodesh Baragaño. En esa ocasión, junto al Lcdo. Antonio J. Colorado, otorgaron la referida escritura con el objetivo de crear el fideicomiso del plan de pensiones para beneficio de los miembros y asociados del entonces bufete de abogados "Martínez, Odell, Calabria & Sierra". La escritura hizo referencia a una resolución de la sociedad de abogados, ("Certificate of Partnership Action"), fechada 9 de marzo de 1981, en la cual se afirmó que los Lcdos. Martínez y Odell, en unión al Lcdo. Colorado, **eran los únicos socios del bufete**. Esta certificación, utilizada por el notario como fundamento de la autoridad de los otorgantes de la escritura pública, se incorporó a la misma.

La prueba incontrovertida reveló que para la fecha de la escritura pública, **habían otros socios**.

Por su parte, en su comparecencia, el Procurador General -cuya posición inicial fue la que avalamos-, nos plantea ahora que existen declaraciones indicativas de que el quejoso Lcdo. Sierra Jr., conocía los hechos desde que ocurrieron y no, desde 1992, según afirmó en su queja. Por esta razón, nos invita reevaluemos.

Además, los Lcdos. Marco A. Rigau, Antonio J. Colorado, José L. Calabria, e Ignacio Rivera han solicitado intervenir como "amicus curiae". El Lcdo. Rigau señala que los abogados Martínez y Odell no faltaron a la verdad, ni hubo en su ánimo intención de engañar al Lcdo. Sierra Jr. Dice conocerlos desde hace mucho tiempo, y nos da fe de su integridad y honestidad. Asimismo, plantea que a la luz de las comparecencias de los Lcdos. Colorado y Calabria, el quejoso Lcdo. Sierra Jr. pudo haber incurrido en conducta constitutiva de perjurio. Por su parte, el Lcdo. Colorado niega que al suscribir la escritura pública en 1981 hubiera intención de mentir o engañar. Insiste en que la inconsistencia con la verdad fue una inadvertencia o error; y califica de injusta nuestra decisión. Mientras, los Lcdos. Calabria y Rivera, entre otras cosas, conciben la actuación de los Lcdos. Martínez y Odell como un mero error "de juicio o de forma", no reñido con los postulados éticos. Asimismo, sugieren **parcialidad** de este Tribunal, destacando que nuestra decisión crea una apariencia de inequidad, pues no disciplinamos al Lcdo. Colorado, aun

cuando éste también suscribió la misma escritura pública objeto de la declaración falsa.[2]

## II

De entrada, aclaramos las coordenadas adjudicativas de nuestra decisión del pasado 12 de abril. Constituye un evento más, en una serie de procedimientos judiciales y disciplinarios que involucran a varios abogados que laboraron en el disuelto bufete de abogados "Martínez, Odell, Calabria y Sierra". La disolución de dicha sociedad profesional en 1992, dio génesis a una larga cadena de disputas judiciales entre los abogados querellados y los abogados excluidos del nuevo bufete creado por Martínez y Odell, en unión al Lcdo. José L. Calabria.[3]

El primero de los casos que requirió nuestra intervención fue Belk Arce v. Fred Martínez y otros, res. en 30 de junio de 1998. Allí resolvimos que los demandados Fred Martínez, Lawrence Odell, José L. Calabria y la sociedad profesional compuesta por ellos --"Martínez, Odell y Calabria"--, habían discriminado contra los Lcdos. John T. Belk Arce y Margarita Serapión por razón de matrimonio. Reconocimos a los demandantes Belk-Serapión derecho a ser indemnizados bajo la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 et seq.

---

[2] Intervención, Lcdo. Calabria, pág. 2; Intervención, Lcdo. Rivera, págs. 4-5.

[3] Los abogados se asociaron bajo el nombre "Martínez, Odell y Calabria".

Subsiguientemente, resolvimos la presente queja. Quedan pendientes dos (2) quejas disciplinarias: AB-98-44 instado por los Lcdos. Juan R. Cancio, Luz Vela y Brunilda Rodríguez, del bufete de abogados "Martínez, Odell y Calabria", contra los Lcdos. Margarita Serapión y John T. Belk Arce; y la AB-98-99, promovida por el Lcdo. Sierra Jr. contra Martínez y Odell. En esta última, se aduce que Martínez y Odell mintieron bajo juramento en el proceso judicial por discrimen por razón de matrimonio que los abogados Serapión y Belk Arce instaron, y éste Tribunal adjudicó. En su oportunidad, decidiremos esta queja, y el valor adjudicativo que debemos conferirle al dato de que en Belk Arce v. Fred Martínez y otros, supra, avalamos las determinaciones de hechos del foro de instancia, que entre otras, no creyó el testimonio de los Lcdos. Martínez y Odell.[4]

---

[4] En específico, el Tribunal de Instancia consignó en su sentencia:

"El testimonio del licenciado Fred Martínez en cuanto a su conocimiento sobre el matrimonio entre Belk y Margarita Serapión fue contradictorio: [e]n la deposición que se le tomó no mencionó en ningún momento que Rodríguez Poggi le había informado sobre el matrimonio. La teoría de los demandados que después cambió es a los efectos que ninguno de los demandados conocía del matrimonio entre éstos hasta tanto se obtuvo el certificado de matrimonio de dichos cónyuges. A preguntas de la licenciada Berkan durante el juicio[,] el licenciado Martínez testificó solamente de los rumores. No obstante[,] cuando su abogada la licenciada Belaval le interroga [é]l menciona por vez primera la conversación con Rodríguez Poggi y que éste le informa del matrimonio de Belk y la licenciada Serapión." Breve relación procesal, determinaciones de

Una tercera queja por conducta profesional impropia contra los Lcdos. Martínez, Odell y Lamoso presentada en marzo de 1998, por hechos aparentemente ajenos a los conflictos que existen entre las partes involucradas en esta queja, fue desistida luego de formalizarse un acuerdo de transacción, que incorporó, además la disposición de varias demandas pendientes ante la Comisión Federal de Comunicaciones. In re: Fred H. Martínez y otros, AB-98-42; véase, In re: Applications of Westel Samos, Inc., y Westel, L.P., FCC 99M-3.[5]

Ciertamente, la multiplicidad de procedimientos judiciales habidos entre las partes nos obliga a examinar

---

hechos, conclusiones de derecho y sentencia, Civil Núm. KAC-92-0820, n.2.

Asimismo, concluyó:

> 99. El único otro testigo que los demandados presentaron para ofrecer una explicación relacionada con el despido de John Belk fue el demandado Lawrence Odell quien testificó que no tenía confianza en John Belk. Los hechos narrados por Odell no nos merecen credibilidad y de haber ocurrido los mismos no se desprende en forma alguna que den base para cuestionarse la confianza de Belk.
>
> [...]
>
> 101. No le damos credibilidad al testimonio de Lawrence Odell a los efectos [de] que en marzo de 1992, John Belk supuestamente fue donde él y le dijo que 'people are choosing sides' y que el escogería el lado de Sierra. Id., pág. 20."

[5] Otros procesos judiciales generados por la disolución de la sociedad profesional son: Sierra y otros v. Martínez y otros, (Civil Núm. KPE 92-0228); Martínez y otros v. Sierra y otros, (Civil Núm. KAC 92-0558). Además, en el Tribunal Federal se instó Serapión v. Martínez y otros, (Civ. Núm. 93-1790).

con cautela los méritos de cada una de las quejas ante nuestra consideración, tal y como abogan los querellados Martínez y Odell. Aun así, sus argumentos en reconsideración y en las comparecencias especiales, nos convencen que debe subsistir la sanción censurándoles.

III

El mandato del Canon 35 es claro:[6] todo abogado tiene la ineludible obligación de ajustarse a la fidelidad de los hechos tanto en su gestión profesional ––ya sea como notario o como abogado litigante––, así como en sus gestiones personales. Incluye actuaciones en las que se despoja de su toga de abogado y convierte en cliente de otro abogado.

**Ceñirse a la verdad** según el Canon 35, va más allá que ocasionar perjuicio a tercero o deliberadamente defraudar o engañar. Se infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común, se

---

[6] En lo pertinente reza:

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

**No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad** ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. [...].

**El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas**. [...]." (énfasis suplido).

pretende realizar actos o negocios de trascendencia jurídica. **Más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin la misma, no podría la profesión jurídica justificar su existencia.**

Los querellados Martínez y Odell no controvierten el dato esencial de que los hechos que consignaron en la escritura pública no eran veraces. Su alegato principal de que se trató de una simple inadvertencia no convence. Se trata de un hecho material lo suficientemente importante en el contexto general que motivó la otorgación de la escritura pública, como para que no pasara desapercibido. De hecho, en su comparecencia el otro otorgante Lcdo. Colorado, reconoce que para no incurrir en la falta que motivó nuestra enérgica censura "[q]uizás se debió haber aclarado con más énfasis que se firmaba dicha escritura para retrotraerse al momento de constituirse el plan, y que por eso se decía que éramos solamente tres (3) socios". Comparecencia Especial Lcdo. Colorado, pág. 3.

Por otro lado, la falta de veracidad de los otorgantes, independientemente de su intención y de si se ocasionó daño a tercero, **es inexcusable dado el sitial preferente que nuestro ordenamiento otorga a los instrumentos públicos**. Por su condición de abogados, conocían cabalmente la naturaleza del acto que realizaban. In re: Colón Ramery, res. en 8 de junio de 1993. Tenían la obligación de brindar al notario los hechos exactos que declaraban. Su responsabilidad no puede ser subestimada con el eufemismo de que se trató de "un mero error de juicio" o

"de forma". Faltaron claramente a la verdad, y no quedan excusados aludiendo a las motivaciones que pudo haber tenido el Lcdo. Sierra Jr. al formular la presente queja.

Sobre el quejoso, Lcdo. Sierra Jr., —conociera o no el contenido exacto de la escritura desde que se otorgó—, lo cierto es que ello es inmaterial para determinación de si los abogados Martínez y Odell violaron el Canon 35.

Independientemente de su inmaterialidad, aunque a simple vista las versiones ofrecidas por el Lcdo. Sierra Jr. y los Lcdos. Calabria y Colorado parecen conflictivas, un examen cuidadoso de los documentos sometidos refleja que las comparecencias de los Lcdos. Calabria y Colorado no refutan cabalmente la posición de Sierra Jr. de que conoció el contenido **exacto** de la escritura pública en el año 1992, cuando obtuvo copia del plan de pensiones del bufete y de la escritura pública otorgada en 1981. Si bien el Lcdo. Calabria sostiene en contrario —que el Lcdo. Sierra Jr. conocía el contenido del plan y de la escritura pública desde el mismo momento en que se otorgó—, sus alegaciones en todo momento se circunscriben a aducir que el Lcdo. Sierra Jr. conocía o debió haber conocido su contenido. Comparecencia, Procurador General, pág. 2. Ello es insuficiente para refutar lo expuesto por el Lcdo. Sierra Jr.

Finalmente, no podemos pasar por alto las insinuaciones de parcialidad que se nos atribuye. **No sólo son altamente impropias, sino que en nada desvirtúan la falta de veracidad** de los Lcdos. Martínez y Odell. Como

señalamos previamente, la consideración de las quejas disciplinarias contra los involucrados en los hechos que dieron base a nuestra decisión del 12 de abril pasado <u>no ha finalizado</u>. Somos plenamente conscientes de que el Lcdo. Colorado suscribió también la escritura pública en la que los Lcdos. Martínez y Odell vertieron información falsa. Al igual que ambos, el Lcdo. Colorado en su momento responderá por su conducta.

Por los fundamentos expuestos, se dictará sentencia proveyendo no ha lugar a la moción de reconsideración de los Lcdos. Martínez y Odell.

Se dictará la correspondiente Sentencia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    Fred H. Martínez              AB-98-46
    Lawrence Odell

SENTENCIA

San Juan, Puerto Rico, a 25 de junio de 1999

Por los fundamentos expuestos en la Opinión <u>Per Curiam</u> que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia y se provee no ha lugar a la moción de reconsideración de los Lcdos. Fred H. Martínez y Lawrence Odell.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Disidente. El Juez Asociado señor Corrada del Río reconsideraría y limitaría la sanción a una amonestación. El Juez Asociado señor Fuster Berlingeri no intervino.

                          Isabel Llompart Zeno
                           Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

In re:

    Fred H. Martínez           AB-98-46     CONDUCTA
    Lawrence Odell                    PROFESIONAL

    OPINION DISIDENTE EMITIDA, EN ETAPA DE RECONSIDERACIÓN, POR EL JUEZ ASO
SEÑOR REBOLLO LOPEZ

        San Juan, Puerto Rico, a 25 de junio de 1999

        El pasado 12 de abril de 1999 disentimos de la determinación de la mayoría de los integrantes del Tribunal de "censurar enérgicamente" a los Lcdos. Fred H. Martínez y Lawrence Odell. Entendimos entonces --<u>posición que reiteramos en el día de hoy</u>-- que no procedía la imposición de sanción disciplinaria de clase alguna por razón de que la conducta en que incurrieron dichos abogados <u>no</u> trascendió los línderos de un mero error de juicio, carente dicha conducta de intención de clase alguna, de parte de dichos abogados, de causarle daño a otra persona. De hecho, la ausencia en el presente caso de daño alguno a tercero es algo que, incluso, la Mayoría se ve obligada a reconocer.

En el día de hoy, la Mayoría ha entendido procedente publicar una Opinión Per Curiam mediante la cual deniega la moción de reconsideración que dichos abogados han radicado. Como de ordinario sucede, en el diario vivir, al una persona intentar explicar o justificar un error que ha cometido, la Mayoría comete un error aun más grave que el que cometió el pasado 12 de abril de 1999.

**Nos referimos, naturalmente, a la norma que hoy establece el Tribunal a los efectos de que el Canon 35 de los de Etica Profesional se aplica a conducta, o gestiones personales, realizada por los miembros de la profesión que <u>no</u> tienen nada que ver con el ejercicio de la misma e independientemente del hecho de que el abogado haya tenido, o no, intención de faltar a la verdad o de causarle daño a otra persona.**

**En primer lugar, una lectura del primer párrafo del mencionado Canon 35 claramente demuestra que esta posición es una totalmente errónea; el mismo establece que la "...<u>conducta</u> de cualquier miembro de la profesión legal <u>ante los tribunales, para con sus representados, y en las relaciones con sus compañeros</u> debe ser sincera y honrada." (Enfasis suplido.) El referido Canon 35 <u>no</u> puede ser más claro. El mismo obviamente se refiere a conducta del abogado directamente relacionada con el ejercicio de la profesión y no en relación a gestiones personales del abogado.**

**En segundo término, en el día de hoy la Mayoría ha establecido un criterio de "responsabilidad absoluta" en relación con la posible infracción de las disposiciones del citado Canon 35 de Etica Profesional al expresar que, a los fines antes mencionados, resulta irrelevante el hecho de que el abogado tuviera la intención, o no, de causarle daño a otro. Tal parece que la Mayoría entiende está lidiando con la comisión de delitos públicos. <u>No</u> podemos refrendar tal posición.**

Por todo lo anteriormente expresado es que nos vemos obligados, nuevamente, a diferir del criterio mayoritario en el presente caso.[7]


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[7] **Rechazamos, de manera enérgica y al igual que lo hace la mayoría de los integrantes del Tribunal, la velada imputación de parcialidad que se le hace a los miembros del Tribunal. Ello <u>no</u> sólo es totalmente infundado sino que completamente impropio de parte de los abogados que la hacen.**