Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL XI-ESPECIAL

| | | |
|---|---|---|
| NEHEMÍAS GARCÍA ROLÓN Y OTROS<br><br>Recurridos<br><br>V.<br><br>FREDDY BLONDET GUTIÉRREZ Y OTROS<br><br>Peticionarios | KLAN202400223 | ***Apelación* acogida como *Certiorari***<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV01284<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de abril de 2024.

Comparece el señor Freddy Blondet Gutiérrez (en adelante, peticionario y/o señor Blondet Gutiérrez) para solicitarnos la revisión de la *Sentencia Parcial* emitida y notificada el 23 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI).[1] Mediante la *Sentencia Parcial* recurrida, el foro primario declaró *Ha Lugar* una solicitud de sentencia sumaria parcial presentada por la parte recurrida del título y, a su vez, declaró *No Ha Lugar* la *Solicitud Desestimación* por prescripción, presentada por el peticionario.

Por los fundamentos que expondremos, se expide el auto de *Certiorari* y se *confirma* el dictamen recurrido.

**I**

La señora Mercedes Salgado Torres (en adelante, señora Salgado Torres y/o Testadora) falleció el 6 de septiembre de 2018.[2]

---

[1] Apéndice del peticionario, a las págs. 150-159.
[2] *Id.,* a la pág. 1.

Número Identificador

SEN2024 _____

El presente caso inició el 24 de febrero de 2022, con la presentación *Demanda* sobre daños y perjuicios, por los hermanos García Rolón[3] (en adelante, parte recurrida) en contra del notario el señor Blondet Gutiérrez, Fulana de Tal y la Sociedad Legal de Gananciales (en adelante, SLG), por ellos compuesta y las compañías de seguro y de fianza notarial denominadas con nombres ficticios ABC y XYZ, respectivamente.[4] En síntesis, alegaron que, mediante la Escrituras Número 3 y 42 del 2 de febrero de 2017, y 28 de julio de 2018, respectivamente, el señor Blondet Gutiérrez autorizó un Testamento Abierto donde figuró como Testadora la señora Salgado Torres. En dichos Testamentos, la señora Salgado Torres designó como herederos a su esposo, el señor Pedro Martínez Lugo, ya fallecido, en un 30% y a sus seis (6) sobrinos, los hermanos García Rolón, en un 70%. La señora Salgado Torres no procreó hijos junto a su esposo.

En la *Demanda* se expuso que, el 1 de marzo de 2021, cursaron una reclamación extrajudicial al señor Blondet Gutiérrez, la cual este no respondió. Según se desprende de la *Demanda*, en un pleito independiente al de autos con el número CA2019CV00722, el TPI declaró nulo el Testamento del 28 de julio de 2018, porque el señor Blondet Gutiérrez no dio fe de haber identificado a la aludida Testadora.[5] Ahora bien, el señor Blondet Gutiérrez había incurrido previamente en la misma deficiencia en la Escritura Número 3. Señalaron que, la actuación del señor Blondet Gutiérrez constituía una violación al Artículo 17 de la Ley Notarial de Puerto Rico[6] y al Canon 18 del Código de Ética Profesional.[7] En la *Demanda*, la parte

---

[3] Los hermanos García Rolón son: Nehemías García Rolón, Agar García Rolón, Obed García Rolón, Jorge L. García Rolón, Yelitza García Rolón y Loida García Rolón.
[4] Apéndice del peticionario, a las págs. 18-22.
[5] *Id.,* a las págs. 20-21.
[6] Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, Art. 17, 4 LPRA § 2035.
[7] 4 LPRA Ap. IX, C. 18.

recurrida solicitó al foro primario que condenara al señor Blondet Gutiérrez al pago de daños y perjuicios ocasionados como resultado de los actos negligentes en los que incurrió, más el pago de las costas, gastos del pleito y honorarios por temeridad.

Posteriormente, el 13 de mayo de 2022, el señor Blondet Gutiérrez presentó *Contestación a Demanda*.[8] Indicó que su estado civil era soltero. En ella, negó prácticamente todas las alegaciones, admitió estar defendiéndose de una querella ética ante el Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) relacionada a la supuesta nulidad del Testamento autorizado presentada el 25 de agosto de 2021, y presentó defensas afirmativas, entre ellas, que la acción estaba prescrita por ser de naturaleza extracontractual.[9] Abundó que, el alegado error de fondo del Testamento surgía de la faz del documento y de su mera lectura, por lo que la parte recurrida debía de haber tenido conocimiento, ya que consultaron con representación legal en el 2019, cuando se interpuso la *Demanda*. Así, las cosas, expuso que, había transcurrido un año desde que la parte recurrida debía tener conocimiento de la falta alegada en la *Demanda*. En virtud de lo anterior, solicitó que se desestimara y/o se declarara No Ha Lugar la *Demanda* incoada.

Luego, el 12 de septiembre de 2022, el señor Blondet Gutiérrez instó una *Demanda Contra Coparte* en contra de AIG Insurance Company (por sus siglas, AIG).[10] En síntesis, adujo que, AIG emitió a su favor una póliza de responsabilidad profesional "claims made" que cubría la responsabilidad reclamada en su contra. Expuso que, AIG se había negado a responder por los presuntos daños y tampoco le había brindado representación legal, incumpliendo así, con su

---

[8] Apéndice del peticionario, a las págs. 24-26.
[9] *Id.,* a las págs. 25-26.
[10] *Id.,* a las págs. 27-28.

obligación. Señaló que estaba demandando a AIG para que respondiera directamente a la parte recurrida en cuanto a su reclamación. En virtud de lo anterior, solicitó la concesión de daños contractuales, así como daños y angustias mentales.

Por otro lado, en esa misma fecha, entiéndase, el 12 de septiembre de 2022, la parte recurrida presentó una *Demanda Enmendada.*[11] Acotó que, AIG y la aseguradora de la fianza notarial United Surety & Indemnity Company (por sus siglas, USIC) eran responsables, tras presuntamente haber asegurado el riesgo de los daños causados por el señor Blondet Gutiérrez en el ejercicio de su profesión como abogado y notario. Consecuentemente, reclamaron haber sufrido daños por haber perdido su participación hereditaria, así como angustias mentales.

En respuesta a la *Demanda contra Coparte*, el 27 de octubre de 2022, AIG presentó una *Solicitud de Desestimación*[12] al amparo de la Regla 10.2 (5) de las Reglas de Procedimiento Civil,[13] a la cual tanto la parte recurrida como el peticionario se opusieron mediante escritos presentados el 2 y 15 de diciembre de 2022, respectivamente.[14] Por su parte, el 22 de diciembre de 2022, AIG presentó su réplica.[15] A su vez, la parte recurrida presentó la correspondiente dúplica el 10 de enero de 2023.[16] En respuesta, el 10 de marzo de 2023, el TPI emitió una *Sentencia Parcial.*[17] En su *Sentencia Parcial*, el foro primario declaró Ha Lugar la *Solicitud de Desestimación* incoada por AIG el 27 de octubre de 2022 y, por consiguiente, desestimó con perjuicio la *Demanda Enmendada* y la *Demanda Contra Coparte* instadas en su contra. Abundó que, la póliza expedida por AIG tenía vigencia por actos, errores u omisiones

---

[11] *Id.,* a las págs. 29-33.
[12] *Id.,* a las págs. 35-42.
[13] 32 LPRA Ap. V, R. 10.2 (5).
[14] Apéndice del peticionario, a las págs. 43-48 y 60.
[15] *Id.,* a las págs. 49-53.
[16] *Id.,* a las págs. 54-59.
[17] *Id.,* a las págs. 60-67.

que ocurrieran desde el 2 de marzo de 2020, hasta el 2 de marzo de 2021, fecha que luego se extendió hasta el 2 de marzo de 2022. Inconforme, el 27 de marzo de 2023, tanto el señor Blondet Gutiérrez como la parte recurrida solicitaron la reconsideración del aludido dictamen,[18] a las cuales se opuso AIG el 28 de marzo de 2023.[19] En respuesta, mediante *Resolución* del 29 de marzo de 2023, notificada al día siguiente, el foro primario denegó ambas solicitudes de reconsideración.[20]

En desacuerdo con el dictamen emitido, el peticionario acudió ante este Tribunal de Apelaciones, mediante un recurso de *Apelación* en el alfanumérico KLAN202300335. En dicho recurso, este Panel determinó confirmar el dictamen apelado, mediante *Sentencia* emitida el 12 de junio de 2023.[21] El 15 de septiembre de 2023, mediante *Resolución,* el Tribunal Supremo declaró No Ha Lugar el recurso presentado ante su consideración.

Regresando a las incidencias ante el foro primario, el 17 de noviembre de 2023, la parte recurrida presentó una *Moción Solicitando se Dicte Sentencia Sumaria Parcial.*[22] Expuso que, el asunto litigioso en controversia eran los daños económicos sufridos por estos como resultado de la negligencia del señor Blondet Gutiérrez en el otorgamiento del Testamento de la señora Salgado Torres.

De ahí, el 27 de noviembre de 2023, las partes presentaron el *Informe de Conferencia con Antelación al Juicio.*[23] En dicho *Informe,* USIC expuso que, el 27 de diciembre de 2013, a solicitud del señor Blondet Gutiérrez, emitió una fianza para responder hasta la suma de $15,000.00 dólares por el desempeño de las funciones de su

---

[18] *Id.,* a las págs. 68-71 y 72-77.
[19] *Id.,* a las págs. 78-82.
[20] *Id.,* a la pág. 83.
[21] *Id.,* a las págs. 84-99.
[22] *Id,* a las págs. 100-105.
[23] *Id.,* a las págs. 106-121.

cargo como notario y de los daños y perjuicios que por acción u omisión causara en el ejercicio de su ministerio. Ahora bien, a tenor del Artículo 1485 del Código Civil de Puerto Rico de 2020, levantó y adoptó las mismas defensas del señor Blondet Gutiérrez, relacionadas a la prescripción y a la valoración de daños.[24] Aclararon que, su exposición estaba limitada a los términos y condiciones de la fianza y su límite de $15,000.00 dólares, solo en caso de que el señor Blondet Gutiérrez no pagara la suma impuesta por sentencia.

El 18 de diciembre de 2023, el señor Blondet Gutiérrez presentó una *Oposición a Solicitud de Sentencia Sumaria*.[25] Señaló que la parte recurrida no identificó un remedio específico en su solicitud. Añadió que, la parte recurrida no precisó en qué momento entendían comenzó a decursar el plazo prescriptivo de la acción contra el señor Blondet Gutiérrez. Así las cosas, enfatizó que, el plazo prescriptivo comenzó a decursar cuando la parte recurrida fue asesorada y su representación legal tuvo la oportunidad de revisar la Escritura Número 42 en preparación para radicar la *Demanda* en el caso CV2019CV00722, concluyendo que ocurrió antes de la radicación del pleito anterior el 27 de febrero de 2019. Por su parte, el 20 de diciembre de 2023, USIC presentó una *Moción en Cumplimiento de Orden* al amparo del Artículo 1485 del Código Civil de 2020.[26]

Por otro lado, debido a los reclamos del señor Blondet Gutiérrez, según incluidos en la *Oposición a Solicitud de Sentencia Sumaria*, el 8 de enero de 2024, la parte recurrida presentó una *Moción en Oposición a Moción de Desestimación por Prescripción*.[27] Puntualizó que, el otorgamiento de un instrumento público, como lo

---

[24] " El fiador puede oponer todas las defensas propias y las que corresponden al fiado, aunque este las haya renunciado". 31 LPRA § 10603, Art. 1485.
[25] Apéndice del peticionario, a las págs. 122-132.
[26] *Id.,* a las págs. 133-134; 31 LPRA § 10603, Art. 1485.
[27] Apéndice del peticionario, a las págs. 135-140.

es un testamento otorgado por un notario, goza de la presunción de corrección. Añadió que, la determinación de que se decretara nulo el Testamento correspondía adjudicarla al Tribunal. Así, pues, indicó que advino en conocimiento del daño una vez el TPI determinó, mediante *Sentencia* notificada el 13 de mayo de 2021, que el Testamento otorgado por el señor Blondet Gutiérrez era nulo *ab initio*, siendo esa la causa próxima del daño sufrido por la parte recurrida al ser despojados de los derechos que les confería dicho Testamento.

Subsiguientemente, el 10 de enero de 2024, el señor Blondet Gutiérrez presentó una réplica.[28] Señaló que la presunción de corrección es rebatible y que se lograba con la mera lectura del Testamento, ya que la omisión de dación de fe de la Testadora era un vicio que hacía nulo el Testamento. Por su parte, el 11 de enero de 2024, la parte recurrida presentó una dúplica.[29] Expuso que, lo que correspondía era acudir al Tribunal a solicitar que se hiciera valer la voluntad expresada por la Testadora en el instrumento autorizado por el señor Blondet Gutiérrez, amparado legítimamente en la presunción de que el Testamento otorgado era legal, válido y correcto en derecho. Añadió que, una vez se convirtió en final y firme la *Sentencia* determinando que el Testamento era nulo *ab initio*, se materializó el daño sufrido por la parte recurrida.

En respuesta, el 23 de enero de 2024, el foro primario emitió y notificó la *Sentencia Parcial* recurrida,[30] mediante la cual declaró Ha Lugar la solicitud de sentencia sumaria presentada por la parte recurrida y No Ha Lugar la solicitud de desestimación presentada por el señor Blondet Gutiérrez. En la *Sentencia Parcial* recurrida, el foro primario resolvió que el señor Blondet Gutiérrez fue negligente

---

[28] *Id.,* a las págs. 141-144.
[29] *Id.,* a las págs. 145-149.
[30] *Id.,* a las págs. 150-159.

en sus actuaciones, cuando autorizó el Testamento de la señora Salgado Torres. En consecuencia, dispuso que lo único que quedaba pendiente por resolver era la existencia y el monto de los daños causados. En la *Sentencia Parcial* recurrida, el foro primario concluyó, además, lo siguiente:

> En el presente caso, no existen dudas sobre la negligencia del notario, pues este la reconoce; su única defensa es que la acción en su contra prescribió, pues los demandantes conocieron de la posible nulidad del testamento en el año 2019. El propio demandado desconoce en qué fecha exacta los demandantes entraron al supuesto conocimiento de la negligencia, pero que según los hechos ya en el 2019, estos conocían la nulidad del testamento. Por lo anterior, sostiene el demandado que los demandantes tenían un año desde el año 2019, desde final de dicho año hasta finales del año 2020 y, sin embargo, lo demandaron en febrero de 2022, fuera del término de prescripción de un año que señalaba el Código Civil de 1930, vigente a la fecha de los hechos.[31]

El foro primario sostuvo, además, que, de los hechos, le quedó claro que el argumento del señor Blondet Gutiérrez no se sostenía en derecho, puesto a que para que naciera una acción de daños y perjuicios y se activara el término prescriptivo de un año, por ser una acción extracontractual, se necesitaban tres (3) elementos fundamentales:

> [...] primero, que ocurra un daño. Segundo, que el daño causado se deba a la negligencia de la parte demandada, ya sea por acción u omisión, y tercero, que la persona que sufrió el daño conozca que ocurrió el daño y quién se lo provocó.[32]

El foro primario expresó que, en el caso del título, el daño hacia la parte recurrida ocurrió cuando la *Sentencia* donde se anuló el Testamento advino final y firme, no desde cuando estos conocieron que existía la posibilidad de que el Testamento fuese nulo, según alegado por el señor Blondet Gutiérrez. Por lo anterior, la primera instancia judicial resolvió que la acción de la parte recurrida no prescribió y, además, que, como el señor Blondet

---

[31] *Id.,* a la pág. 157.
[32] *Id.*

Gutiérrez reconoció su negligencia, procedía dictar sentencia sumaria parcial, según presentada por la parte recurrida.[33] Añadió que, el señor Blondet Gutiérrez incumplió con sus deberes como notario tras no identificar a la señora Salgado Torres en el Testamento, por lo que la parte recurrida quedó privada de heredar los legados que intentó dejarles mediante Testamento su tía.[34]

En desacuerdo, el 5 de febrero de 2024, el señor Blondet Gutiérrez presentó una *Moción Solicitando Determinación de Hechos y de Reconsideración*.[35] Solicitó que se determinaran los hechos que dieron base a la *Sentencia Parcial*. Además, reiteró que no existía una relación abogado-cliente entre el señor Blondet Gutiérrez y la parte recurrida. En respuesta, mediante *Resolución* emitida el 5 de febrero de 2024, y notificada al día siguiente, el foro primario declaró No Ha Lugar la solicitud de reconsideración.[36]

Inconforme aún, el 6 de marzo de 2024, el señor Blondet Gutiérrez presentó un recurso de *Apelación*, que acogimos como *Certiorari*, en el cual esbozó la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al no desestimar la demanda contra el notario demandado por prescripción.

Mediante *Resolución* del 8 de marzo de 2024, este Tribunal ordenó al peticionario acreditar el cumplimiento con las Reglas 13(B) y 14(B) del Reglamento de este Tribunal de Apelaciones.[37] Por otro lado, concedimos a la parte recurrida hasta el 5 de abril de 2024, para presentar su alegato en oposición. Mediante escrito presentado el 7 de marzo de 2024, el señor Blondet Gutiérrez cumplió con lo requerido en la *Resolución* del 8 de marzo de 2024.

---

[33] Apéndice del peticionario, a la pág. 158.
[34] *Id.*
[35] *Id.*, a las págs. 160-166.
[36] *Id.,* a la pág. 167.
[37] 4 LPRA Ap. XXII-B, R. 13(B) y R. 14(B).

El 5 de abril de 2024, la parte recurrida presentó el *Alegato de la Parte Apelada*. Con el beneficio de la comparecencia de ambas partes procederemos a exponer el derecho aplicable.

**II**

**A. Expedición del Recurso de *Certiorari***

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[38] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> [...]
> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[39]
> [...]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> [...]
> (b) *Recurso de "certiorari"* [...]
> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación

---

[38] 32 LPRA Ap. V, R. 52.1.
[39] *Id.*

de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.[40]

[…]

El recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[41] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[42] Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[43] Conviene desatacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[44] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[45] La Regla 40 del Reglamento del Tribunal de Apelaciones[46], esboza los criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[40] 32 LPRA Ap. V, R. 52.2 (b).
[41] *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico,* 205 DPR 163, 174 (2020).
[42] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[43] *Id.*
[44] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[45] *Id.*
[46] 4 LPRA Ap. XXII-B, R.40.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[47] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[48]

## B. La Sentencia Sumaria

Como es sabido, en nuestro ordenamiento, el mecanismo de la sentencia sumaria está regido por la Regla 36 de las Reglas de Procedimiento Civil[49], la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal.[50] El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[51] Solamente debe ser dictada una sentencia sumaria "en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[52]

El propósito de la sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no

---

[47] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).

[48] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

[49] 32 LPRA Ap. V, R. 36.

[50] *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

[51] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

[52] *Id.*; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 720-721 (1986); *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 726 (1994); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).

ameritan la celebración de un juicio en su fondo.[53] En otras palabras, el tribunal procederá a dictar sentencia sumaria solo cuando esté claramente convencido que la vista evidenciaria es innecesaria.[54] Al no haber controversia sustancial y real sobre hechos materiales, sólo falta aplicar el derecho pertinente a la controversia.[55] Por lo tanto, una controversia en torno a hechos no materiales, de existir, no impide que el tribunal dicte una sentencia por la vía sumaria.[56]

En lo pertinente al término para presentar una solicitud de sentencia sumaria, la Regla 36.2 de las Reglas de Procedimiento Civil dispone lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[57]

En consonancia con lo anterior, el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios judiciales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo.[58] La Regla 36.3 de las Reglas de Procedimiento Civil[59], detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (i) una exposición breve de las alegaciones de las partes; (ii) los asuntos litigiosos o en

---

[53] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).
[54] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).
[55] *García Rivera et al. v. Enríquez, supra.*
[56] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 958 (1993).
[57] 32 LPRA Ap. V, R. 36.2.
[58] *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615, 630 (2009); *Padín v. Rossi*, 100 DPR 259, 263 (1971); *William Pérez Vargas v. Office Depot/Office Max, Inc.*, 203 DPR 687, 699 (2019).
[59] 32 LPRA Ap. V. R. 36.3.

controversia; (iii) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (iv) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (v) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y, (vi) el remedio que debe ser concedido.[60]

Por su parte, la Reglas 36.3 inciso (a)(4) de las Reglas de Procedimiento Civil dispone:

> (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: ...
>
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal...[61]

Por otro lado, la Regla 36.3 inciso (c) de las Reglas de Procedimiento Civil lee como sigue:

> (b) Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. [62]

Cumplidos estos requisitos, el inciso (e) de la Regla 36.3 de las Reglas de Procedimiento Civil establece que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a

---

[60] *Id.*; *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *William Pérez Vargas v. Office Depot / Office Max, Inc.*, *supra*, 698.
[61] 32 LPRA Ap. V, R. 36.3 (a)(4).
[62] 32 LPRA Ap. V, R. 36.3 (c).

interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[63]

Sin embargo, el solo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria.[64]

Conforme ha resuelto el Tribunal Supremo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a demostrar que [tiene] prueba para sustanciar sus alegaciones".[65] Las meras afirmaciones no bastan.[66] "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[67]

Ahora bien, reiteradamente el Tribunal Supremo ha indicado que, el mecanismo de sentencia sumaria no es el apropiado para resolver casos en donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[68] De la misma manera, también ha dicho que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el

---

[63] 32 LPRA Ap. V, R. 36.3 (e); *García Rivera et al. v. Enríquez, supra,* 338; *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018); *Lugo Montalvo v. Sol Meliá Vacation, supra,* 225; *SLG Zapata-Rivera v. J. F. Montalvo,* 189 DPR 414, 430 (2013).

[64] *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra,* 913; *García Rivera et al. v. Enríquez, Id.*; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.,* 128 DPR 538, 549 (1991); *Cuadrado Lugo v. Santiago Rodríguez, supra,* 281; *Corp. Presiding Bishop CJS of LDS v. Purcell, supra,* 721.

[65] *Flores v. Municipio de Caguas,* 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión,* 178 DPR 200, 215-216 (2010).

[66] *Id.*

[67] *Ramos Pérez v. Univisión, supra,* 215; *Roldán Flores v. M. Cuebas, Inc., supra,* 677.

[68] *Elías y otros v. Chenet y otros,* 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 663 (2017).

Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[69]

El Tribunal Supremo se expresó en cuanto al proceso de revisión de las sentencias sumarias y estableció que en dicho proceso el Tribunal de Apelaciones debe: (i) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de las Reglas de Procedimiento Civil[70], y la jurisprudencia le exigen al foro primario; (ii) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36 de las Reglas de Procedimiento Civil[71]; (iii) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de las Reglas de Procedimiento Civil[72], de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; y, (iv) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[73]

En cuanto a la identificación de las controversias de hecho y de derecho, el Tribunal Supremo ha llamado la atención a lo siguiente:

> Aunque a veces no es fácil atisbar la diferencia, es vital que los tribunales distingan puntualmente entre lo que es un hecho y una conclusión de derecho. Un "hecho" en el campo jurídico es un acontecimiento o un comportamiento determinado y pertinente para la norma legal que se pretende aplicar. La norma jurídica se aplica al supuesto que constituye el "hecho" para arribar a determinada conclusión de derecho.
> [...]
> En todo caso debidamente instado ante un foro judicial habrá siempre una controversia de derecho presente y es precisamente esa controversia la que vienen los

---

[69] *Elías y otros v. Chenet y otros, Id.; García López v. Méndez García*, 88 DPR 363, 380 (1963).
[70] 32 LPRA Ap. V, R. 36.
[71] *Id.*
[72] 32 LPRA Ap. V, R. 36.4.
[73] *Roldán Flores v. M. Cuebas, Inc., supra*, 679; *Meléndez González v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

tribunales llamados a resolver. Si se comete el error de catalogar las controversias de derecho como controversias de hecho se eliminaría virtualmente el mecanismo de sentencia sumaria de nuestro ordenamiento procesal, pues este requiere expresamente la inexistencia de una controversia de hechos materiales para que un tribunal pueda dictar sentencia de esa forma.[74]

La sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (iv) como cuestión de derecho, no proceda.[75] Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos (2) maneras: (i) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y, (ii) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[76] Las partes no pueden añadir en apelación exhibit[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo.[77] Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos.[78] También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia.[79]

---

[74] *Lugo Montalvo v. Sol Meliá Vacation, supra,* 226-227.
[75] *SLG Fernández-Bernal v. RAD-MAN,* 208 DPR 310, 335 (2021).
[76] *Meléndez González v. M. Cuebas, supra,* 114.
[77] *Id.*
[78] *Id.,* 115.
[79] *Vera v. Bravo,* 161 DPR 308, 335 (2004).

**C. Prescripción**

La prescripción es una materia sustantiva que se rige por las disposiciones del Código Civil de Puerto Rico (en adelante, Código Civil). Por la prescripción se extinguen del propio modo los derechos y las acciones, de cualquier clase que sean.[80] Las acciones prescriben por el mero lapso del tiempo fijado por la ley.[81]

"La prescripción extintiva es una institución de derecho sustantivo que extingue el derecho a ejercer determinada causa de acción".[82] Esta tiene efecto de extinguir los derechos cuando no concurra un acto interruptor dentro del plazo.[83] La prescripción extintiva "tiene como propósito castigar la inercia y estimular el ejercicio rápido de las acciones, puesto que no se debe exponer a las personas toda la vida, o por un largo tiempo, a ser demandadas".[84] Esto se debe, entre otras razones, a la situación de indefensión en que pudiera quedar como consecuencia del paso del tiempo y la desaparición de la prueba.[85]

A tales efectos, una vez se agota un término prescriptivo se extingue el derecho a ejercer la causa de acción, con la correspondiente exoneración para la persona que hasta entonces se encontraba sujeta a responder.[86] Por consiguiente, la prescripción es una defensa afirmativa que debe plantearse expresa y oportunamente ya que, de lo contrario, se entiende renunciada.[87] El término prescriptivo puede interrumpirse de tres (3) formas: (i)

---

[80] 31 LPRA § 5241, Art. 1830. El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

[81] 31 LPRA § 5291, Art. 1861.

[82] *Maldonado Rivera v. Suarez y otros*, 195 DPR 182, 192 (2016).

[83] *Id.*

[84] *Haedo Castro v. Roldán Morales*, 203 DPR 324, 336-337 (2019); *COSSEC et al. v. González López et al.*, 179 DPR 793, 806 (2010).

[85] *Maldonado Rivera v. Suárez y otros, supra*, 193; *Campos v. Cía. Fom. Ind.*, 153 DPR 137, 143 (2001); *Culebra Enterprise Corp. v. ELA*, 127 DPR 943, 950 (1991).

[86] *Maldonado Rivera v. Suárez y otros, Id.*; *Santiago v. Ríos Alonso*, 156 DPR 181, 188 (2002).

[87] *Maldonado Rivera v. Suárez y otros, Id.*; *Meléndez Guzmán v. Berríos López*, 172 DPR 1010, 1017 (2009); *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93 (2002).

mediante la correspondiente acción judicial, (ii) mediante reclamación extrajudicial; y, (iii) por el reconocimiento de la deuda por parte del deudor.[88] Así, pues, una vez se interrumpe la prescripción, el término prescriptivo comienza a transcurrir nuevamente.[89]

El término para reclamar las obligaciones que nacen por daños causados como consecuencia de un acto culposo o negligente está regulado en el Código Civil.[90] El término prescriptivo respecto a las reclamaciones para exigir responsabilidad extracontractual, por las obligaciones derivadas de la culpa o negligencia, es de un (1) año, contado desde que la persona agraviada conoce la existencia del daño y quien lo causó.[91] La brevedad de este término responde a que la Asamblea Legislativa quiso dotar de mayor certeza una relación que generalmente carece de ella debido a la inexistencia de un vínculo previo entre las partes y el desconocimiento de la extensión de la obligación.[92] Dicha responsabilidad emana del Artículo 1802 del Código Civil, el mismo lee como sigue: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado […]".[93] Este término prescriptivo de un (1) año comienza a transcurrir cuando el reclamante conoció o debió conocer que sufrió un daño, quién se lo causó y los elementos necesarios que permiten ejercer de manera efectiva su causa de acción.[94] Como es sabido, si la causa de acción está prescrita, procede la desestimación de la demanda.[95]

---

[88] 31 LPRA § 5303, Art. 1873; *Maldonado Rivera v. Suárez y otros, Id.*
[89] *Maldonado Rivera v. Suárez y otros, Id.; Meléndez Guzmán v. Berríos López, supra,* 1017.
[90] *Col. Mayor Tecn. v. Rodríguez Fernández,* 194 DPR 635, 644 (2016).
[91] 31 LPRA § 5298, Art. 1868.
[92] *Maldonado Rivera v. Suárez y otros, supra,* 194; *Culebra Enterprise Corp. v. ELA, supra.*
[93] 31 LPRA § 5141, Art. 1802.
[94] *Maldonado Rivera v. Suárez y otros, supra,* 194; *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365, 374 (2012); *COSSEC et al. v. González López et al., supra; Colón Prieto v. Géigel,* 115 DPR 232, 247 (1984).
[95] *Rimco, Inc. v. Pérez y Cia. de P.R., Inc.,* 148 DPR 60, 65 (1999).

### D. Responsabilidad Civil del Notario

El Tribunal Supremo ha sostenido que los notarios están obligados a cumplir estrictamente con lo dispuesto en la Ley Notarial de Puerto Rico, en los cánones del Código de Ética Profesional, y en el contrato entre las partes.[96] En reiteradas ocasiones el Alto Foro ha sostenido que en nuestra jurisdicción el notario ejerce una función dual; por un lado, es un funcionario que realiza una función pública y, por el otro, es un técnico profesional del Derecho, ambas funciones se hallan imbricadas.[97]

El notario es el custodio de la fe pública, la cual constituye la espina dorsal de todo el esquema de autenticidad documental.[98] La fe pública notarial le impone al notario el deber de ser diligente en su gestión y de asegurarse de cumplir con todas las solemnidades de ley al autorizar instrumentos públicos.[99] A la luz de lo anterior, el Estado le confiere a un documento autorizado por un notario, bajo su firma, signo, sello y rúbrica, una presunción de credibilidad y certeza de que lo afirmado en el mismo es cierto, correcto y concuerda con la realidad.[100] Debido a la intervención del notario, custodio de esa fe pública, el documento notarial goza de tres (3) atributos esenciales: autenticidad, corrección y exactitud.[101] El notario al autorizar un documento presuntivamente da fe pública y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima.[102] A esos efectos, el Artículo 2 de la Ley Notarial de Puerto Rico consagra el principio de la fe pública notarial:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad

---

[96] *In re Davison Lampon*, 159 DPR 448, 455 (2003).
[97] *Id.*, 460.
[98] *Feliciano Caraballo v. Ross Tuggo,* 165 DPR 649, 657 (2005).
[99] *Id.*
[100] *Id.*, 658.
[101] *In re Davison Lampon, supra*, 457.
[102] *In re Roldan Figueroa,* 129 DPR 718, 721 (1992).

conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.[103]

La responsabilidad civil del notario puede ser contractual o extracontractual.[104] Entiéndase que, cuando la labor del notario se haya limitado a la esfera de sus deberes como funcionario público, su responsabilidad es de origen extracontractual.[105] Es decir, la naturaleza de la responsabilidad civil del notario será extracontractual cuando este provoca algún daño por haber violado una obligación que la ley le impone.[106]

**III**

Por segunda ocasión, este Panel tiene ante su consideración el caso del título. En esta ocasión, compareció el señor Blondet Rodríguez, mediante un recurso de *Apelación* que determinamos acoger como *Certiorari*, luego de que la primera instancia judicial emitió una *Sentencia Parcial* mediante la cual declaró Ha Lugar una solicitud de sentencia sumaria presentada por la parte recurrida y, a su vez, declaró No Ha Lugar una solicitud de desestimación presentada por el aquí peticionario. Mediante su único señalamiento de error, el peticionario nos invita a concluir que el foro primario incidió al no desestimar la *Demanda* incoada por prescripción.

La primera instancia judicial emitió una *Sentencia Parcial,* sin embargo, es nuestro criterio que nos encontramos ante la revisión de un dictamen que constituye *Resolución* revisable mediante el recurso de *Certiorari*. Esto se debe a que, la determinación del foro

---

[103] Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, Art. 2, 4 LPRA § 2002.
[104] *Chévere v. Cátala*, 115 DPR 432, 441 (1984).
[105] *Id.*
[106] *Feliciano Caraballo v. Ross Tuggo, supra,* 661.

primario constituye una resolución, tras haber adjudicado solamente el elemento de negligencia y dejar pendiente la adjudicación de la cuantía que ha de indemnizarse por daños y perjuicios extracontractuales.[107] Por consiguiente, cuando se bifurcan en el pleito los elementos de negligencia y daños, la determinación de negligencia no resuelve finalmente la cuestión litigiosa de la cual pueda apelarse, ya que no puede ser final por no ser aún ejecutable.[108]

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[109] Puntualizamos, que el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[110] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Ahora bien, la expedición del recurso de *Certiorari* al amparo de la Regla 52.1 de las Reglas de Procedimiento Civil,[111] no opera en el vacío; tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[112]

En resumidas cuentas, el 28 de julio de 2018, el señor Blondet Gutiérrez autorizó mediante la Escritura Número 42 el Testamento Abierto de la señora Salgado Torres. La señora Salgado Torres

---

[107] *Abrams Rivera v. ELA,* 178 DPR 914, 928 (2010); *García v. Padró,* 165 DPR 324 (2005).
[108] *Abrams Rivera v. ELA, Id; U.S. Fire Ins. Co. v. AEE,* 151 DPR 962, 968 (2000).
[109] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).
[110] *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009).
[111] 32 LPRA Ap. V, R. 52.1.
[112] 4 LPRA Ap. XXII-B, R.40.

falleció el 6 de septiembre de 2018. El 1 de marzo de 2021, la parte recurrida le cursó una reclamación extrajudicial al señor Blondet Gutiérrez, la cual este no respondió. Luego, en el caso CA2019CV00722, el 12 de mayo de 2021, notificada al día siguiente, en lo atinente, el TPI declaró nulo *ab initio* el Testamento del 28 de julio de 2018, porque el señor Blondet Gutiérrez no dio fe de haber identificado a la aludida Testadora. Ahora bien, el presente caso inició el 24 de febrero de 2022, con la presentación de una *Demanda* sobre daños y perjuicios por la parte recurrida. Por consiguiente, la aludida *Demanda* no estaba prescrita. Veamos.

El notario ejerce una actividad profesional con una función pública delegada, por lo que cuando viola una norma impuesta por el Estado su responsabilidad es extracontractual.[113] La causa de acción de la parte recurrida está predicada en el daño que le ocasionó la negligencia del señor Blondet Gutiérrez en el otorgamiento del Testamento de la señora Salgado Torres, al no haber dado fe de haber identificado a la aludida Testadora. La negligencia del señor Blondet Gutiérrez de no dar fe de conocer personalmente a la Testadora implica una violación a una formalidad de fondo, cuya omisión no puede ser subsanada mediante la presentación de prueba extrínseca, por lo que, al quedar incumplida produce *ab initio* la nulidad del Testamento.[114] Cónsono con el marco doctrinal, en lo pertinente, en un pleito independiente al de autos con el número CA2019CV00722, el TPI declaró nulo el Testamento del 28 de julio de 2018, al amparo del Artículo 636 del Código Civil,[115] porque el señor Blondet Gutiérrez no dio fe de haber identificado a la aludida Testadora.

---

[113] *Chévere v. Cátala, supra*, 440.

[114] *Deliz et als. v. Igartua et als.*, 158 DPR 403, 423 y 425 (2003).

[115] "Será nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas en este Código". 31 LPRA § 2152, Art. 636.

En el caso ante nos, el peticionario nos compele a responder la interrogante sobre cuándo comienza a decursar el plazo prescriptivo de una acción de daños y perjuicios contra un notario por haber autorizado un testamento nulo *ab initio* que afecta los derechos de alguien llamado a heredar.

El Artículo 1868 del Código Civil fija un término prescriptivo de un (1) año para las acciones sobre responsabilidad civil extracontractual, su brevedad fue deliberadamente pretendida como una manera de contrarrestar la incertidumbre que caracteriza a este tipo de obligación.[116] El término prescriptivo para reclamaciones al amparo del Artículo 1802 del Código Civil responde principalmente a la ausencia de una relación jurídica previa entre el demandante y el demandado.[117] Como en este caso, entre el señor Blondet Gutiérrez y la parte recurrida no existía una relación jurídica.

Acentuamos que, en nuestro ordenamiento jurídico rige la teoría cognoscitiva del daño.[118] Dicha teoría es reiterada en el Artículo 1868 del Código Civil.[119] La vertiente cognoscitiva del daño gira en torno al conocimiento que tiene la víctima del daño sufrido.[120]

En el caso *Col. Mayor Tecn. v. Rodríguez Fernández,* el Tribunal Supremo expresó respecto a la consecuencia lesiva que:

> […]
> Una de las tres etapas de infligir el daño se determina cuando se manifiesta físicamente o existen algunas consideraciones físicas que lleven al perjudicado a reconocer el daño que le causa menoscabo.
> Nos explica el profesor Herminio Brau del Toro que el momento en que se tiene conocimiento de la consecuencia lesiva es cuando el perjudicado ha podido identificar esas manifestaciones físicas, a pesar de no tener toda su magnitud y extensión. Sin embargo, en el caso de una sentencia o una resolución, ese conocimiento no surge hasta tanto se extingue el período determinado para que se convierta en final y firme. *No es hasta tanto la determinación adviene final y*

---

[116] *Maldonado Rivera v. Suárez y otros, supra,* 208.
[117] *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra,* 388.
[118] *Maldonado Rivera v. Suárez y otros, supra,* 212.
[119] *Col. Mayor Tecn. v. Rodríguez Fernández, supra.*
[120] *Id.*

*firme que se materializa su efecto, sin posibilidad alguna de remedio. Mientras la determinación del tribunal de instancia esté sujeta a revisión judicial, esta puede ser modificada o revocada, por lo que se elimina su consecuencia y queda sin efecto algún daño alegado.*

[…]

En ese sentido, hemos señalado que el término de un año para ejercer la causa de acción por daños y perjuicios comienza a "contarse a partir de la fecha en que expiró el período en que hubiera podido apelarse". [...][121]

En ese sentido, continuó expresando el Alto Foro que en lo concerniente al conocimiento del daño:

[…] Como norma general, la fecha del archivo en autos de la notificación de la sentencia se reconoce como el momento en el que las partes advienen en conocimiento de las determinaciones de un tribunal en el caso ante su consideración. [...]

Según lo anterior, se puede establecer que, como regla general, el momento en que se obtuvo el conocimiento del dictamen judicial está definido por la fecha del archivo en autos de copia de la notificación o, en su defecto, por la fecha del matasellos del correo de la notificación enviada. Esta conclusión es cónsona con la teoría cognoscitiva del daño que explicamos anteriormente, en la cual el perjudicado conoció del menoscabo sufrido debido a que este se manifestó mediante la sentencia o la resolución notificada y esto le permite reconocer que tiene el alegado daño.

Conforme a las dos etapas discutidas, la parte perjudicada puede conocer del daño por la determinación adversa o porque haya culminado el pleito, de forma tal que adviene en conocimiento del daño propiamente con la manifestación de una determinación ejecutable. [...][122]

Por todo lo anterior, colegimos que al amparo del Artículo 1868 del Código Civil, la parte recurrida tenía un (1) año para exigir la responsabilidad civil del notario desde que advino en conocimiento de la decisión final y firme sobre el litigio en el que se le imputó su negligencia, ya que es en ese momento en el que se tienen los elementos necesarios para ejercer la acción judicial. Una vez se convirtió en final y firme la *Sentencia* determinando que el Testamento era nulo *ab initio,* se materializó el daño sufrido por la parte recurrida.

---

[121] *Id.*, 645-646.
[122] *Id.*, 647.

En fin, habiéndose declarado nulo el Testamento en cuestión, mediante *Sentencia* notificada el **13 de mayo de 2021**, en el alfanumérico CA2019CV00722, fue en esa fecha que comenzó a decursar el término de un (1) año para que la parte recurrida presentara su causa de acción. Tomando en consideración que la acción en el caso del título fue instada el **24 de febrero de 2022**, forzoso es concluir que la misma no estaba prescrita. Por lo anterior, el foro recurrido actuó correctamente al denegar la solicitud de desestimación por alegada prescripción, así que el error esgrimido no fue cometido.

**IV**

Por los fundamentos que anteceden, se expide el auto de *Certiorari* y se *confirma* el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones